Christopher F. Burger, #16056
Shannon C. Oury - #19578
**STEVENS & BRAND, L.L.P.**
900 Massachusetts St., Ste. 500
P.O. Box 189
Lawrence, KS  66044-0189
(785) 843-0811 – Phone
(785) 843-0341 - Fax
Attorneys for Plaintiff, Bret Stouder

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRET STOUDER | | ) |
| | Plaintiff, | ) |
| vs. | | ) |
| | | ) |
| M&A TECHNOLOGY, INC. & | | ) |
| Magdy Elwany | Defendants. | ) |
| | | ) |

Case No. 09-CV-4113-JAR

### MOTION TO COMPEL DISCOVERY

Plaintiff, Bret Stouder, appears through his counsel Stevens & Brand, L.L.P., and moves this Court for an order compelling discovery pursuant to Federal Rule of Civil Procedure Rule 37 and Local Rule 37.2.  In support of his motion, Mr. Stouder states as follows:

### GENERAL BACKGROUND

This is a lawsuit concerning Plaintiff's employment agreement with Defendant.  Plaintiff was terminated in July 2009, and brought this action in August after Defendants refused to recognize either his right to be employed elsewhere or their wrongful termination which rendered restrictive covenants in the agreement unenforceable and obliged Defendant to pay Plaintiff $300,000 in wages.  Defendants counterclaimed to enforce the covenants, moved for a TRO which was denied in November, and subsequently moved for a temporary injunction which had hearings over the winter and was granted in May.  A permanent injunction was entered upon an opposed motion last week.  Defendants have been granted leave to file an amended counterclaim adding claims for monetary damages allegedly arising from Plaintiff's breach of the covenants under theories such as tortious interference with contractual relations, diverted business opportunities, and disclosure of confidential and trade secret information.

1

Plaintiff has issued discovery to pursue, analyze and defend the claims (as applicable), but Defendants have failed and refused to produce responsive records or make responsive answers.

## DISCOVERY BACKGROUND

1.    On June 22, 2010, the Plaintiff, Bret Stouder served Plaintiff's First Request for Production of Documents (attached as A) and Plaintiff's First Interrogatories upon the Defendants. (Attached as C).

2.    On July 23, 2010, Defendants mailed their Response to Plaintiff, Bret Stouder's First Request for Production of Documents, objecting to or without completely responding to 42 of the 70 requests.  (attached as B).

3.    On July 23, 2010, Defendants mailed their Answers to Plaintiff, Bret Stouder's First Interrogatories, objecting to or without completely answering the interrogatories.  (Attached as D).

4.    On July 20, 2010, the Plaintiff, Bret Stouder served Plaintiff's Second Request for Production of Documents (attached as E) and on August 19, 2010, Defendant mailed their Response to Plaintiff's Second Requests for Production of Documents (attached as F).

5.    On July 27, 2010, Plaintiff's counsel had a phone conference with Defendants' counsel to discuss the discovery issues between their clients and to secure the information without court action. Additionally the parties agreed to an extension of time for the Plaintiff to file an amended complaint because the documents requested are necessary to evaluate additional claims.  Counsel for Defendants' has not supplemented the outstanding requests at this time.

6.    Plaintiff, Bret Stouder's counsel sent Defendants' counsel correspondence on August 9, 2010, requesting answer and supplementation of the Defendants' answers and responses, enclosing a draft of this Motion, and reminding counsel of their previously agreed upon and submitted June 23, 2010 protective order in this case.  Defendants agreed to discuss these issues on August 19, 2010.

7.    The undersigned certifies that he has conferred with opposing counsel on August 19, 2010 concerning the content of this motion prior to its filing.  A draft of this motion was previously exchanged, and a teleconference was held on the 19th during which counsel discussed each point and

2

issue. Counsel for Defendants made certain promises of supplementation which have not been fulfilled as of this date.

8.     Counsel for Defendants expects Defendants to supplement their responses, but files this motion due to the local rule requiring it to be filed as of this date. Upon supplement by Defendants, Plaintiff will file an amended motion, as necessary.

## APPLICABLE LAW

This Motion to Compel is made pursuant to Federal Civ. Pro. Rule 37(a) and local rule 37.2, and is made on account of the Defendants' failure to appropriately answer discovery requests, and their otherwise evasive or incomplete answers and responses, outlined as follows.

FIRST REQUEST FOR PRODUCTION OF DOCUMENTS.

1.     Request for Anticipated Exhibits- Request No. 2.   Defendants refused to produce anticipated exhibits they plan to use at trial asserting that they will provide their trial exhibit at the appropriate time as designated by the Court. Defendants are well aware of the issues in this case and there are certain documents that they have identified that are necessary to prove their case including those used in prior hearings. The rules of discovery mandate that the documents be produced.

2.     Request for Every Statement Relevant to this Case- Request No. 3. Defendants object to this request as overly broad, and unilaterally limit their production to "relevant sworn statements". The determination of relevancy cannot be judged by the Plaintiff until the requested information is provided and all statements, not just "sworn statements," are relevant to this matter.

3.     Request for Other Litigation- Request No. 5. Defendants refuse to produce all documents concerning litigation in which any Defendant was a party. Defendants objected to this request as being overbroad, unlimited in time and scope and on the basis that there is no showing that the information would reasonably lead to discoverable evidence. However, one purported reason for the termination of Plaintiff is Defendants' contention that Plaintiff caused them to be involved in litigation, thus making

3

documents of other litigation relevant so as to determine the adverse actions taken against the M&A employees who caused that other litigation and the time commitments involved with the other litigation. All of this information is subject to discovery, and the determination of relevancy cannot be judged by the Plaintiff until the requested information is provided.

   4. <u>All email and other documents relevant to the issues in this case – Request No. 6.</u> Defendants object to this Request as overly broad, but promise to respond to the 'more specific' subsequent requests. Defendants have failed to provide any email in their initial disclosure, and failed to provide it in response to these requests. The email and other 'relevant documents" are relevant and should be produced.

   5. <u>Mr. Stouder's Complete Personnel File- Request No. 7.</u> Defendants object to this Request as vague and ambiguous with respect to the definition of "personnel file" and states that subject to and without waiving any objection, relevant documents regarding Mr. Stouder's employment will be produced. It is disingenuous for M&A to assent that it does not know what a "personnel file" is and a key issue in this case is the actual reason for M&A's termination of Mr. Stouder's employment and the *complete* contents of his personnel file is highly relevant to this issue.

   6. <u>Agreements and Drafts Concerning Mr. Stouder's Employment and Separation- Request No. 8.</u> Defendants object to this request as not reasonably calculated to lead to discoverable evidence and has not produced the documents requested. Drafts of agreements related to the key issues in the case (employment and termination) certainly must be relevant even though the determination of relevancy cannot be judged by the Plaintiff until the requested information is provided.

   7. <u>All Sales and Gross Margin of each Sale made by Team HPC from January 1, 2008, to Current- Request Nos. 10 & 11.</u> Defendants object and limit its response to sales and gross margin made from January 1, 2009, to the date of Plaintiff's termination. As counsel for Plaintiff stated in the Scheduling Conference, the ability to evaluate additional claims and possibly amend the Plaintiff's Complaint depends on this sales information, namely the sales of everyone, not just Plaintiff since his commissions are tied to the sales of each salesperson. This information is also relevant due to Defendants

allegation that Plaintiff failed to procure sufficient sales or sales with sufficient margin, thus justifying his termination.

8.     Identification of each Salesperson for TeamHPC who made a Sale and Commissions Paid from January 1, 2008, to Current- Requests No. 12 & 13. Defendants object and limit its response to sales and gross margin made from January 1, 2009, to the date of Plaintiff's termination. Further, Defendants failed to produce the information they claim that they will produce. As counsel for Plaintiff stated in the Scheduling Conference, the ability to evaluate additional claims and possibly amend the Plaintiff's Complaint depends on this sales information. This information is also relevant due to Defendants alleging that Plaintiff (and the Team HPC division) failed to procure sufficient sales or sales with sufficient margin, thus justifying his termination.

9.     Request Nos. 14, 15 & 16 Regarding the 1-800-TeamHPC Telephone Number. Defendants object to the relevancy of the request regarding the 1-800-TeamHPC telephone number because the Court granted the preliminary (and now permanent) injunction. Plaintiff is still entitled to engage in discovery and to a full trial on the issues of the proper termination of the Agreement, whether the restrictive covenant is enforceable, and whether the testimony provided at the preliminary hearing was truthful. Defendants testified that they were still in the HPC market, yet their personalized phone number ("1-800 TEAM HPC") had been disconnected leaving no advertised way for purportedly prospective customers to contact them. The fact as to whether M&A is still in the supercomputing industry is relevant to the enforceability of the restrictive covenants, the duration of any injunction, and the veracity of their witnesses.

10.    Documents Concerning TeamHPC Website- Request Nos. 17 & 18. Defendants object to the relevancy of the request regarding the TeamHPC website because the Court granted the preliminary (and now permanent) injunction. Plaintiff is still entitled to engage in discovery and to a full trial on the issues of the proper termination of the Agreement, whether the restrictive covenant is enforceable, and whether the testimony provided at the preliminary hearing was truthful. While somewhat complicated, the HPC industry works off a Linux platform, however Defendants 'updated' the website immediately

5

before the preliminary injunction hearing on a windows platform, an error that reveals the charade of their claim to be remaining in the industry and their incompetence.  The fact as to whether M&A is still in the supercomputing industry is relevant, as well as the honesty of their witnesses.

11.    All policies and documents concerning the installation and integration of sales. Defendants object with the usual field of objections, but assert that the documents will be produced.  They were not, and need to be.

12.    Each Quote and/or Bid Submitted to Potential Customers- Request Nos. 21 & 22. Defendants object to the request for quotes and bids submitted by TeamHPC to potential customers since January 1, 2008, as vague, ambiguous, and overly broad and not reasonably calculated to lead to discoverable evidence.  Relevancy can not be judged by the Plaintiff until the request is provided and this information is calculated to evaluate whether TeamHPC is still operating in the supercomputing market which is relevant to the determination as to whether M&A still has a legitimate business interest to protect by the covenant not to compete.  Separately, Defendants have now asserted a claim for damages against Mr Stouder for lost sales.  Because the sales of HPC computers are made in a bidding environment, Defendants will have to have been involved in a bid to be able to assert a claim for damages for such a "lost" sale, thus making all bids and quotes submitted by Defendants after Plaintiff's departure relevant as to the damage calculation.

13.    Technical specifications for New Products - Request No. 23.  Plaintiff objects and asserts that this request is vague, ambiguous and not reasonably calculated to lead to discoverable evidence and again makes the objection that the enforceability of the restrictive covenant has been determined. Contrary to the Defendants assertion, the Plaintiff is still entitled to engage in discovery and to a full trial on the issues of the proper termination of the Agreement and whether the restrictive covenant is enforceable.  Because a restrictive covenant is only enforceable if the employer has a legitimate business interest, the fact as to whether M&A is still in the supercomputing industry is relevant, and what products M&A is selling is key to this determination.  It is also relevant as to the truthfulness of Defendants' witnesses at the preliminary hearing who testified that a certain desktop computer was a "supercomputer."

Such testimony misled the Court and the specifications of each such product is necessary to show that Defendants are not in the HPC industry, are misrepresenting their desktop computer as a 'supercomputer,' and otherwise have issues of veracity.

14.     Marketing Plan since January 1, 2009- Request No. 24.   Plaintiff objects to producing each marketing plan since January 1, 2009, for TeamHPC as vague, ambiguous and not reasonably calculated to lead to discoverable evidence and again makes the objection that the enforceability of the restrictive covenant has been determined.   Contrary to the Defendants assertion, the Plaintiff is still entitled to engage in discovery and to a full trial on the issues of the proper termination of the Agreement and whether the restrictive covenant is enforceable.   The fact as to whether M&A is still in the supercomputing industry is relevant.   Because a restrictive covenant is only enforceable if the employer has a legitimate business interest, the fact as to whether M&A is still in the supercomputing industry is relevant, and the presence, extent or lack of a marketing plan is relevant in that regard.   Such information is separately relevant in the new claim against Plaintiff for lost business and revenue; the plans for the division are necessary to determine the causal connection to Plaintiff's termination.

15.     Mr. Garrett's and Mr. Carrington's Team HPC P&L books of account – Request No. 25 & 26.   Defendants object as vague, ambiguous, overly broad, and not reasonably calculated to lead to discoverable evidence because of the Court's grant of a preliminary (and now permanent) injunction. Plaintiff, however, is entitled to discovery on the issues in regard to the veracity of the testimony at the hearing, the issuance or denial of a permanent injunction, whether such information supports one of Defendants' purported explanations for Plaintiffs termination (lack of profitability), and the belief that Defendants kept two sets of books on Team HPC authored by two separate employees.

16.     Succession Plan- Request No. 27.   Defendants object to producing each succession plan for Mr. Magdy Elwany by claiming that to the extent the information pertains to the enforceability of the restrictive covenant, the Court has determined the matter.   Mr. Stouder has a claim for breach of contract and is entitled to discovery on all issues relating to whether M&A and Magdy Elwany breached the employment agreement, the veracity of the testimony at the preliminary hearing, and the relevant matters

for a trial on the permanent injunction.  As a key element to enforceability of the covenant, this evidence is discoverable.  Separately, Defendants claim that Plaintiff sought to sell Team HPC to a competitor but the sale failed, and the terms and conditions of succession, ownership and the company's successors are relevant to a sale of the company.

17.    All Correspondence and Documents Exchanged with Microtech Computers, Inc.- Request Nos. 28, 29 & 41.  Defendants object to the request involving the exchange of information with Microtech Computers, Inc. as not being relevant to the issues in this case. Microtech is in the HPC space that was shared by Team HPC and presents itself as a direct competitor of Defendants.  However, Defendants have given Microtech access to Defendants' servers and other purportedly confidential information.  As such, because Defendants are alleging that Plaintiff shared or otherwise had access to confidential information thus supporting the enforcement of the restrictive covenant and additionally claim that Plaintiff caused harm to Defendants by using confidential or trade secret information, yet Defendants shared this very information with a 'competitor', the information becomes relevant to prove the falsity of the claims, the waiver of such confidentiality, and the lack of damage.  Defendants themselves subpoenaed Microtech owner Dana Chang for the preliminary injunction hearing, introduced evidence in the hearing related to Microtech, have made representations to the Court regarding Mr. Stouder's employment with Microtech Computers, Inc, and have asserted that one set of purported grounds for Plaintiff's termination to be the sharing or taking of confidential information, thereby making all of this information relevant in this case.

18.    Mr. Garrett's File on TeamHPC- Request No. 30.  Defendants object to the relevancy of the request because the Court granted the preliminary (and now permanent) injunction. The Plaintiff is still entitled to engage in discovery and to a full trial on the issue and this information is relevant to whether M&A breached the Employment Agreement. Upon belief, Mr. Garrett retained a separate folder of documents relevant to Defendants' breaches of its contract with Plaintiff.  This is clearly relevant. Additionally, the file is believed to contain financial information and other operational information

describing the actual performance of the HPC division, and thus showing that Plaintiff was not terminated with good cause.

19.    M&A Policies regarding compliance with DOC9 and DOC9 orders– Requests No. 31 and 33 and 34 and 35. Defendants object as irrelevant and refer Plaintiff to the regulations. One stated reason for Mr. Stouder's termination was a failure to consider the application of a "DOC9" designation (i.e. a priority procurement regulation for military sales) when submitting a bid for government work, and Defendants also assert that a sale was not commercially reasonable because of the DOC9 requirements and thus could be rejected without being in violation of Plaintiff's employment agreement. (If a sale rejected but was commercially reasonable, the restrictive covenants are unenforceable). Defendants have now counterclaimed against Plaintiff for a commission on the sale they assert was not commercially reasonable and was designated as a DOC9 transaction. As a basis for termination and for an affirmative claim against Plaintiff, Defendants' internal policies are relevant, and all other pending orders (which factor into the Defendants' contention of commercial unreasonableness) are relevant. DOC9 orders were promised to be produced, but none have been.

20.    Documents Relevant to Attending Supercomputing 09- Request No. 32.   Defendants object to the relevancy of the request because the Court granted the preliminary (and now permanent) injunction. The Plaintiff is still entitled to engage in discovery and for a full trial on the issues. Because a restrictive covenant is only enforceable if the employer has a legitimate business interest, the fact as to whether M&A is still in the supercomputing industry is relevant, certainly when such evidence also goes to the veracity of testimony provided at the preliminary injunction. In this case, the largest trade show is the SuperComputing tradeshow, which Defendants cancelled their attendance, and then 'renewed' it after filing their TRO application. Testimony was given as to their rationale at the injunction hearing, and the veracity of same is relevant and discoverable. Finally, whether Team HPC was staying in the industry is directly relevant to Defendants' claim for damages against Plaintiff.

21.    Policies and procedures for the conversation of orders – Request No. 36.   Defendant object as vague, ambiguous, overly broad and not calculated to lead to the discoverable evidence.

Defendants have asserted that one reason Plaintiff was terminated was because the HPC orders could not be converted into production according to the bids.   In background, Defendants refused to begin production on orders until they had 'converted' the order into production.  This would often take days, weeks and occasionally months, thus making production untimely, more difficult and more expensive. Defendants now blame Plaintiff for these delays and make a counterclaim against Plaintiff for same, and the process Defendants used for conversion is relevant.

22.   Division quotas – Request No. 37.   Defendant object as overly broad.  The sales quotas go to show the veracity of the testimony provided at the preliminary hearing and whether Defendants are still in the HPC industry, facts necessary for evaluating and defending against Defendants' counterclaims. None have been produced, despite assurances to the contrary.

23.   All Compensation Paid to Chris Allison since January 1, 2008- Request No. 38. Defendants object to this request as overly broad and that compensation paid to Chris Allison is irrelevant to the commissions owed and paid to Plaintiff.  Because the employment agreement mandates that Mr. Stouder will be paid a portion of the commissions paid to Mr. Allison this information is relevant to the determination of M&A has properly paid Mr. Stouder or is in breach of the Employment Agreement.  It is also relevant as to the timing of payments made for sales after termination.

24.   Request for Report Showing Timely Completion of TeamHPC Orders- Request No. 39. Defendants object to this request as overly broad and indicates it will provide documents showing timely completion of TeamHPC orders since January 1, 2009.  This response is insufficient, and the Defendants are not permitted to unilaterally modify the Plaintiff's document request.  Because M&A is asserting that it terminated Mr. Stouder for cause, at least partially due to his performance and issues with change orders and delays, this information is relevant to the issues in this case in that it would show whether component or other changes were made necessary due to the delay of Defendants.

25.   ERP policies and procedures – Request No. 40.   Defendants object as vague and ambiguous, and do not respond.  The ERP system is the inventory control program from which all sales and production operate.   It often dictates whether components are available and whether changes are

necessary.   Defendants now blame Plaintiff for every change, even though their ERP policies and procedures will help show the falsity of those claims.

      26.   <u>Communications with Federal Edge since January 1, 2009- Request No. 43.</u>   Defendants object to this request as overly broad, vague, ambiguous and not reasonably calculated to lead to discoverable evidence and unilaterally limit its response to communications with Federal Edge regarding the China Lake Order.   M&A rejected a sale under the auspice of the sales invoice being hand-interlineated with its name on it and assert a claim against Plaintiff for commission on a sale made by Federal Edge, Defendants have made relevant the issue of how the purchase order was addressed involving Federal Edge, the issue of Plaintiff's communication with Federal Edge, and the sale made by Federal Edge.   The course of conduct between Defendants and Federal Edge is relevant to the determination of whether the rejection of the China Lake Order was based on commercial reasonableness or not, as well as whether the claim against Plaintiff for commission is another ruse to try to attack Plaintiff and unnecessarily increase his costs of litigation.

      27.   <u>Documents Showing Intent to Stay within the HPC Space- Request No. 44.</u>   Defendants object to the relevancy of the request because the Court granted the preliminary (and now permanent) injunction.   The Plaintiff is still entitled to engage in discovery and to a full trial on the issues which includes whether the restrictive covenant is enforceable.   The fact as to whether M&A is still in the supercomputing industry is relevant to this issue.   Separately, the information is relevant to Defendants' claims of damages for lost sales and damage within the industry.

      28.   <u>Documents Concerning Attempts to Sell TeamHPC- Request Nos. 45 & 66.</u>   Defendants object to the relevancy of the request because the Court granted the preliminary (and now permanent) injunction.   The Plaintiff is still entitled to engage in discovery and to a full trial on the issues and whether M&A is still in the supercomputing industry is relevant to the enforceability of the restrictive covenant.   Additionally, the efforts of M&A to sell TeamHPC are relevant to the assertion by M&A that Mr. Stouder was terminated for cause, and the claims that Defendant are making against Plaintiff that he improperly

shared information with prospective purchasers. Finally, the information is separately relevant to the counterclaim for damage to the business and the value associated with it.

29.     Kalis email – Request No. 46. Defendants make a proper objection that the request is overbroad. Plaintiff limits the request to email from and/or to Mr Kalis concerning Mr. Stouder and/or Team HPC, especially in regard to the termination of Mr. Stouder. Mr. Kalis negotiated the termination of Plaintiff, gave instructions on the sale of Team HPC and was engaged in other factual matters at issue in this case. Those factual matters must be produced.

30.     Email using the terms "succession", "Linux" or "China Lake" – Requests 48-50. Defendants object asserting these requests to be vague, etc etc, and ask Plaintiff to identify the emails it desires to have produced. Such an objection places the cart before the horse since Plaintiff does not know which email exist. This information is relevant to the issues in this case concerning the Defendants breach of the employment agreement, its departure from the HPC industry, its charade of staying in the industry, and its new claim against Plaintiff for the China Lake sale.

31.     Customer complaints and responses – Requests 52 & 53. Defendants object as vague, ambiguous, overbroad, and do not understand "responses" or "responsive measures." One stated reason for the termination of Mr Stouder was errors in bidding and complaints. Plaintiff is entitled to see every complaint, the reason for it, and how it was remedied, since this is a stated basis for his termination.

32.     All Profit and Loss Statements for TeamHPC from 2005-2009- Request No. 54. Defendants object to this request as not reasonably calculated to lead to discoverable evidence and asserts that the potential relevance has already been decided by the Court and preliminary (and now permanent) injunction. Defendants then unilaterally limit states that will produce documents regarding TeamHPC sales and financial performance for 2009. The Plaintiff is still entitled to engage in discovery and to a full trial on the issues. Mr. Stouder has a claim for breach of contract which he is not precluded from pursuing by the injunction, and this information, for the time period requested, is relevant to the determination as to whether M&A breached the employment agreement. Separately, the profit and loss of M&A is directly relevant to the issue of whether M&A breached Mr. Stouder's employment agreement.

Finally, the information is relevant to Defendants' claims that Plaintiff caused damage to Team HPC, its value, and amounts at issue.

33.    All Tax Returns for M&A 2005-2009- Request No. 55.   Defendants object to this request as vague, ambiguous, and overly broad with respect to the time period and not reasonably calculated to lead to discoverable evidence.  This request asks for a total of five (5) tax returns, documents which all companies readily have on hand; therefore, is in no way overly broad.  These records are relevant to Defendants contention that its Team HPC division was unprofitable and justified Mr. Stouder's termination, and to the amount and extent of Defendants' alleged damages.

34.    All ISO Documents Detailing Problems with Delivery of TeamHPC Systems from 2005-2009- Request Nos. 56 & 60.  Defendants object to this request as vague, ambiguous, and overly broad with respect to the time period and not reasonably calculated to lead to discoverable evidence.  M&A has placed Mr. Stouder's performance at issue in this matter and specifically the issues regarding change orders and timing; therefore, documents detailing delivery issues are relevant to the issues in this matter.

35.    Copies of Receipts for Supercomputing Trade Show from 2005-Current- Request Nos. 59 & 60.  Defendants object to the relevancy of the request because the Court granted the preliminary (and now permanent) injunction.  The Plaintiff is still entitled to engage in discovery and to a full trial on the issues.  Because a restrictive covenant is only enforceable if the employer has a legitimate business interest, the fact as to whether M&A is still in the supercomputing industry is relevant.  Separately, Defendants have allocated costs to Team HPC related to the trade shows for which there was full and partial reimbursement from vendors and third parties.  As such, the claim that there was a lack of profit is false, being misrepresented by Defendants, and relevant to Defendants' claims of damages.

36.    Overhead and cost allocation to Team HPC – Request No. 61.   Defendant object as vague, etc. etc, and to an unlimited time period.  They state they will produce documents showing the financial performance of Team HPC, sales and gross margins on individual since 2009, but do not affirm providing responsive documents since the inception of Team HPC (three years earlier) allocating costs and overhead to it.  Defendants have asserted as a reason for Plaintiff's termination that the Team HPC

13

division was not profitable, and the manner in which Defendants allocated overhead and the supporting documentation for same is relevant. Separately, it is relevant to the amount and extent of damages Defendants' seek.

37.     Assignment of Proceeds Agreements Entered into by M&A since 2005- Request No. 65. Defendants object to this request as vague, ambiguous, not reasonably calculated to lead to discoverable evidence, and limits its production to assignments of proceeds forwarded to M&A regarding the China Lake Order.  In addition to DOC9 claims, Defendants rejected the commercially reasonable China Lake sale because it claims to have never dealt with an assignment of proceeds.  Accordingly, it is relevant to identify all other instances in which Defendants have used assignment of proceeds documentation, and thus whether the claim for damages against Plaintiff has any merit.  Plaintiff is entitled to the documents requested to determine if this is a credible justification for rejection of the China Lake Order or if M&A had previously or subsequently accepted similar documentation.

38.     Prospective purchaser communications – Request 66.  Defendants object on relevant because of the grant of a preliminary (and now permanent) injunction.  At the preliminary hearing, Defendants testified that it was busy in the HPC industry, and has now counterclaimed against Plaintiff for lost sales and damage to the business.  The records are therefore separately relevant as to the veracity of witnesses at the preliminary hearing, whether Defendants are still in the HPC industry and thus have an enforceable interest, the extent to which Defendants can be damaged through phantom lost sales, in defense of Defendants' claims that Plaintiff provided confidential information to prospective purchasers, and as to the 'prospects' that Plaintiff somehow prevented from purchasing from Defendants.

39.     Purported trade secrets – Request 68.  Defendants object as vague, etc etc, and that this request has nothing to do with whether Plaintiff was terminated with cause.  Defendants, however, have asserted a claim against Plaintiff for using confidential information to his benefit, and therefore what "trade secrets" he had access to is relevant to those claims, as well as an evidentiary hearing on a permanent injunction.

40.   GSA Contracts – Request 69.   Defendants object as vague, etc, etc, and that Defendants do not understand what his has to do with its case.  However, Defendants have sued Plaintiff for an allegedly converted sale which was made under its GSA contract, the terms of which are relevant to Defendants' claims of damages.

41.   Plaxo communications – Request 70.   Defendants asserted at the preliminary hearing that Plaintiff was holding himself out as an employee of Team HPC after his termination and that this conduct justified an injunction and damages against him.  However, it turns out that Defendants had changed his password, were receiving the updates from Plaxo, and preventing Plaintiff from changing his account.  Such documents, therefore, go to the veracity and false testimony presented before the Court by Defendants, a matter that is always relevant.

## SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

1.   Resumes of employees installing software – Request 1.   Plaintiff requested the resume of each individual who performed work programming, loading or otherwise integrating the software, programs and/or scripts on each product sold by Team HPC since January 1, 2008.  Defendants refuse to produce them, asserting such requests to be irrelevant.  However, Defendants have counterclaimed against Plaintiff for lost business and have contended that they have the ability and expertise to remain in the HPC computing space, which means they must have people qualified to install such software.  Absent such expertise, the falsity of their claims and testimony will become apparent and the ruse of their position known.

2.   Time cards for software installation – Request 2.   Plaintiff requested the time cards for each engineer showing the time spent performing work programming, loading or otherwise integrating the software, programs and/or scripts on each product sold by

15

Team HPC since January 1, 2008.  Defendants refuse to produce them, asserting such requests to be irrelevant.  However, Plaintiff is accused of entering into sales that resulted in loss to Defendants' Team HPC division due in part to increased labor costs.  Records of those costs have therefore been made relevant.  Additionally, the time spent installing the software will show that qualified personnel are necessary for a company to legitimately remain in the HPC industry and thus pursue damages.  This evidence will therefore additionally prove the falsity of Defendants' claims at the preliminary injunction hearing that they remain in the HPC industry and undermine the counterclaim.

FIRST INTERROGATORIES

1. <u>Reasons for Termination – Interrogatory 3.</u>  Defendants refuse to identify their reasons supporting their termination of Plaintiff, instead providing an "including but not limited to" list of slung mud.  As facts that are solely within the control of Defendants which form the basis of their claims and the scope of discovery, it needs to be provided in a meaningful and complete manner.

2. <u>Sales since January 1, 2009 – Interrogatory 5.</u>  Defendants refuse to provide the sales information for other salesmen of Team HPC.  However, this information is relevant in that Plaintiff is entitled to commissions arising from all or some of those salesmen, and the existence of sales is relevant to Defendants contention that it is still in the HPC industry.

3. <u>Defendants' damages – Interrogatory 6.</u>  Defendants do not understand how to "itemize" their damages and refuse to do so.  Defendants are seeking damages against Plaintiff, and must itemize them at a time that discovery can still be meaningfully engaged.

4. <u>Microtech access – Interrogatory 7.</u>  Defendants refuse to identify the information they have allowed its purported competitor to have access to.  Microtech is a company competing in the

HPC industry and was given access to Defendants' servers and other information. Defendants have now sued Plaintiff for damages arising from his alleged use of confidential, proprietary and trade secret Team HPC information. Access granted to a competitor is relevant to Defendants' claims.

5.     Contact with Non- HPC customers or clients – Interrogatory 8.  Defendants refuse to provide the identity of any non-HPC customer or client contacted by Mr Stouder because Defendants have been granted a preliminary (and now permanent) injunction. The issue is relevant, however, to a hearing on a permanent injunction and the reasonableness of the scope of the injunction. Team HPC and M&A have dramatically different prospective customers and the lack of overlap of identity, function and experience is relevant to the reasonableness of the scope of an injunction. Separately, the information is relevant to evaluate the scope, extent and fact of damages against Plaintiff on Defendants' counterclaim of lost business.

6.     China Lake communications – Interrogatories 9-11.  Defendants object to providing the identification of their communications concerning the China Lake order, despite having now sued Plaintiff for his purported conversion of this order and having used it as a basis for terminating Plaintiff due to it not being "commercially reasonable." A complete listing of communications is relevant and necessary.

7.     Other litigation – Interrogatory 12.  Defendants object to identifying the litigation in which it was involved in the last three years. Because Defendants have contended that Plaintiff caused them to be involved in litigation several years ago thus justifying his termination, the existence, conduct, and effect of other litigation is relevant as to the drains on the Defendants and the actions taken against other employees.

8.     Succession of M&A -- Interrogatory 14.  Defendants refuse to identify who will own M&A upon the death of Mr Elwany. This information is relevant to a hearing for a permanent injunction and Defendants' breach of the employment agreement with Plaintiff. The Defendants' failure to have a succession plan makes the covenants unenforceable.

17

Separately, it is relevant to the counterclaims for damages in that it helps show the value of the business and the availability for sales.

WHEREFORE, the Plaintiff requests that the Defendants provide meaningful response to the requests for production and interrogatories, for his attorney fees and costs in having to bring this motion, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted:

**STEVENS & BRAND, LLP**

By: ___/s/ Christopher F. Burger___
Christopher F. Burger #16056
900 Massachusetts St., Ste. 500
P.O. Box 189
Lawrence, KS 66044-0189
(785) 843-0811
(785) 843-0341 – Fax
cburger@stevensbrand.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2010, I electronically served and filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to:

Paul D. Seyferth #16837

Andrew W. Fund #78171

Seyferth Blumenthal & Harris LLC

300 Wyandotte, Ste. 430

Kansas City, MO 64105

*Attorneys for Defendant and Counterclaimant M & A Technology, Inc.*

___/s/ Christopher F. Burger___
Christopher F. Burger

18